UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 05-2173(DSD/JJG)

Christine Arnott, Lisa
Bowen and Ann Feichtinger,

       Plaintiffs,

v.                                                              **ORDER**

Archway Marketing Services,
a division of AHL Industries,

       Defendant.


       Kelly A. Jeanetta, Esq. and Miller O'Brien, 120 South
Sixth Street, Suite 2400, Minneapolis, MN 55402, counsel
for plaintiffs.

       Gregory J. Stenmoe, Esq., Jason M. Hedican, Esq. and
Briggs & Morgan, P.A., 80 South Eighth Street, Suite
2200, Minneapolis, MN 55402 and Noah G. Lipschultz, Esq.,
Thomas J. Piskorski, Esq. and Seyfarth Shaw, 131 South
Dearborn Street, Suite 2400, Chicago, IL 60603, counsel
for defendant.


       This matter is before the court upon defendant's motion for

summary judgment.  Based upon a review of the file, record and

proceedings herein, and for the reasons stated, the court grants

defendant's motion in part and denies defendant's motion in part.


**BACKGROUND**

       Plaintiffs Christine Arnott, Lisa Bowen and Ann Feichtinger

commenced this action against their former employer, defendant

Archway Marketing Services ("Archway").  Plaintiffs claim that

Archway preferentially treated male salespersons better than female

salespersons, as evidenced through differences in job titles, base pay and the assignment of sales leads and accounts.  Plaintiffs allege, among other things, that Archway engaged in a pattern and practice of gender discrimination in violation of the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964.

Archway sells and delivers marketing products and services in a wide variety of industries.  Archway categorizes its services and products into three divisions: trade fulfillment, consumer fulfillment and customer service.  For the majority of the time relevant to this lawsuit, Archway's sales force consisted of individuals located throughout the United States who sold products exclusively within one of the three divisions, referred to as "non-vertical salespersons," and individuals who sold the products and services of all three divisions within a particular industry, referred to as "vertical salespersons."  Vertical salespersons reported to the president of Archway, while non-vertical salespersons reported to the president of the respective division.

On August 27, 2001, Archway hired Arnott as a director of new business development in the consumer fulfillment division at a base annual salary of $75,000.  Archway hired Feichtinger on February 12, 2002, as a manager of new business development in the consumer fulfillment division at a base salary of $65,000.  Prior to hiring Arnott, Archway terminated the employment of salespersons Brian Hammill, a director of business development in consumer fulfillment

who earned a base salary of $71,306, and Jack Rustad, a sales account executive in consumer fulfillment who earned a base salary of $68,544.   After hiring Feichtinger, Archway terminated the employment of Murphy McKee in July 2002, a manager of business development in consumer fulfillment earning $62,000, and John MacClaren in September 2002, a director of business development in consumer fulfillment earning $85,000.

Prior to October 1, 2003, Archway's non-vertical sales force consisted of eight men and five women: Mark Lamberty, Craig Ingram, Kirk Zechel, Chip Rohde, Russ Kerr, Ken Henderson, Christine Arnott, Ann Feichtinger, Ernest Pizio, Greg Irving, Linda Cummings, Jill Marshall and Carol Hathaway.   (See Burke Decl. ¶ 7, Ex. 1; Jeanetta Aff. Exs. 1-2.)   Each salesperson had a title of vice president, director or manager of one of the three divisions, and there were six male vice presidents, two male directors, three female directors and two female managers.   The salary range of Archway's non-vertical salespersons at that time was $52,767 to $125,000.   The range for male salespersons was $66,000 to $125,000 and the range for female salespersons was $52,767 to $85,000.[1]

As of October 2003 there were four male vertical salespersons and no female vertical salespersons.   Each vertical salesperson had

_____

[1]   The male salespersons' salaries were: $125,000, $110,000, $98,530, $96,000, $90,000, $86,000, $85,000 and $66,000.   The female salespersons' salaries were: $85,000, $83,700, $72,450, $64,800 and $52,767.   (See Jeanetta Aff. Exs. 1, 2.)

a title of senior vice president.  Three of the vertical salespersons earned a base salary of $175,000 and one earned a base salary of $109,000, but had been hired at a base salary of $178,000.  (See Burke Decl. ¶ 7, Ex. 1.)  Prior to October 2003, there had been a fifth male vertical salesperson who had a title of senior vice president and earned $176,000.  There had previously been one female vertical salesperson at Archway, and she worked from November 2000 until June 2001 at a base salary of $140,000. The parties dispute whether the female vertical salesperson had the title senior vice president or vice president.

In October 2003, Archway hired Bowen as a director of new business development in the consumer fulfillment division.  Bowen was hired at a base salary of $83,000.  Bowen was also guaranteed a $72,000 commissions draw for a twelve-month period.  Between October 1, 2003, and May 10, 2004, Archway hired five new salespersons.

| Name | Hire Date | Title | Division | Base Salary |
|---|---|---|---|---|
| Mike Ecker | 1/01/2004 | Vice President | Trade Fulfillment | $120,000 |
| Dobbin Prezzano | 2/23/2004 | Vice President | Trade Fulfillment | $135,000 |
| Kathleen Carter | 3/31/2004 | Director | Trade Fulfillment | $90,000 |
| Mike Shallow | 4/01/2004 | Vice President | Trade Fulfillment | $120,000 |
| Gary Reno | 5/10/2004 | Senior Vice President | Customer Service | $150,000 |

In July 2003, Archway hired Ed Herzog as senior vice president of sales and began to restructure its sales force.  Archway thereafter largely abandoned its categorization of salespersons as verticals and non-verticals and began to centralize its sales force.  Following the reorganization, which occurred subsequent to October 2003, all salespersons were trained to sell all products and services and reported directly to Herzog.  In February 2004, plaintiffs attended a company-wide training on the  products and services in the customer service and trade fulfillment divisions.

After Prezzano, Ecker, Shallow and Reno were hired, Bowen asked Herzog why she and Kathleen Carter had been hired as directors, as opposed to vice presidents, and at lower salaries. Herzog said that he would look into it.  (Bowen Dep. at 28-29.) According to Bowen, she also voiced concerns that sales accounts were being unfairly distributed and that better quality accounts were going to men.

Following no response from Herzog, in May 2004, plaintiffs and Kathleen Carter spoke to the vice president of human resources, Debra McCreight, to address their concerns about salaries, job titles and account distribution.  At that time, the combined Archway sales force consisted of:

| | | |
|---|---|---|
| Steve Givens, | Senior Vice President, | $175,000 |
| Hal Stinchfield, | Senior Vice President, | $175,000 |
| Jim Suddendorf, | Corp. Vice President, | $175,000 |
| Gary Reno, | Senior Vice President, | $150,000 |
| Dobbin Prezzano, | Vice President, | $135,000 |
| Mike Shallow, | Vice President, | $120,000 |

| | | |
|---|---|---|
| Mike Ecker, | Vice President, | $120,000 |
| Craig Ingram, | Vice President, | $120,000 |
| Mark Lamberty, | Vice President, | $110,000 |
| Russ Kerr, | Vice President, | $110,000 |
| Kathleen Carter, | Director, | $ 90,000 |
| Lisa Bowen, | Director, | $ 83,000 |
| Christine Arnott | Director, | $ 83,700 |
| Ann Feichtinger | Manager, | $ 72,450 |
| Carol Hathaway | Manager, | $ 52,767 |
| Bill Heedum | Manager, | $ 63,000 |

McCreight reviewed the background and resumes of all the Archway salespersons and evaluated plaintiffs' titles and salaries in light of the newly implemented sales strategy. Based on her review, on July 12, 2004, McCreight decided to increase plaintiffs' respective base salaries as follows: Bowen and Arnott to $90,000 and Feichtinger to $80,000. Herzog and the president of Archway concurred in that decision. However, Bowen's guaranteed draw was reduced by the amount of her salary increase. Plaintiffs and Carter also received the title of vice president. At that point, plaintiffs' base salaries became proportionate with the salary of the female salesperson hired in 2004 after the reorganization, Kathleen Carter.

In July 2004, Archway again reorganized its sales force as follows, with all respective base salaries remaining the same: Reno became the sole salesperson in the customer service division; Givens, Lamberty, Arnott and Bowen were assigned to the consumer fulfillment division; and the remaining eight salespersons were designated in the trade fulfillment division. (See Jeanetta Aff. Exs. 2, 14.) Despite being assigned divisions, as of September 17,

2004, all salespersons continued to be responsible for selling all Archway services and products, prospecting new accounts and leveraging products and services in other divisions to their current customers.  All salespersons reported to the respective president of their assigned divisions.

In September 2004, Bowen and Arnott raised their concerns regarding disparate pay with Murad Velani, the new president of the consumer fulfillment division.  Velani discussed the situation with McCreight and asked McCreight to provide him additional information.  (Velani Dep. at 29.)  In October 2004, Archway terminated McCreight as vice president of human resources.  On November 17, 2004, having received no response, Bowen followed up her discussion with Velani with an e-mail.  (See Velani Dep. Ex. 7.)  On November 28, Velani e-mailed Bowen and informed her that he was working on the situation with the newly hired vice president of human resources and that he expected a resolution by mid-December.

Bowen thereafter received a written severance agreement dated December 17, 2004, explaining that her employment with Archway would be terminated effective December 31, 2004.  Feichtinger received an identical letter dated December 29, 2004.  Both letters explained that Bowen and Feichtinger were being terminated due to Archway's re-evaluation of its business needs and attempt to streamline its operations.  On January 16, 2006, Archway terminated Arnott's employment.

Bowen, Arnott and Feichtinger filed this action against Archway alleging violations of the Equal Pay Act and gender discrimination in violation of Title VII.  In addition, Bowen and Feichtinger allege claims of reprisal discrimination under Title VII.  Bowen, a Minnesota citizen, also alleges claims of gender and reprisal discrimination under the Minnesota Human Rights Act.  Lastly, Arnott and Bowen assert claims of age discrimination in violation of the Age Discrimination in Employment Act of 1967.  Archway now moves for summary judgment on all claims.

### DISCUSSION

### I.   Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.  On a motion for summary judgment, the court views all evidence and inferences in a light most favorable

to the nonmoving party.  See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.

## II.  Equal Pay Act Claims

To establish a prima facie case of wage discrimination under the Equal Pay Act ("EPA"), a plaintiff must establish that an employer compensated employees of one sex at a lower rate than employees of the opposite sex for "'equal work on jobs the performance of which requires equal skill, effort, and responsibility' under similar working conditions."  EEOC v. Universal Underwriters Ins. Co., 653 F.2d 1243, 1245 (8th Cir. 1981) (quoting 29 U.S.C. § 206(d)(1)); see also Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Taylor v. White, 321 F.3d 710, 715-16 (8th Cir. 2003).  If a plaintiff establishes a prima facie case, the burden shifts to the employer to establish that "the pay differential was based on a factor other than sex." Simpson v. Merchs. & Planters Bank, 441 F.3d 572, 579 (8th Cir. 2006) (internal quotations omitted); see also 29 U.S.C. § 206(d)(1); Hutchins v. Int'l Bhd. of Teamsters, 177 F.3d 1076, 1081-82 (8th Cir. 1999).

To be considered "equal" under the EPA, two jobs need not be identical, only "substantially equal."  Simpson, 441 F.3d at 578 (internal quotations omitted).  The EPA's application does not

9

depend upon job titles or classifications but rather "the actual requirements and performance of the job." Id. Whether two jobs are substantially equal is a question of fact that requires a "practical judgment on the basis of all the facts and circumstances of a particular case," focusing on the skill, effort and responsibility of the employees in light of the broad remedial purpose of the EPA. Id. "'Insubstantial or minor differences in the degree or amount of skill, or effort, or responsibility required for the performance of jobs will not render the equal pay standard inapplicable.'" Krenik v. County of LeSueur, 47 F.3d 953, 961 (8th Cir. 1995) (quoting 29 C.F.R. § 1620.14(a)).

To determine whether jobs require equal skill, the court considers factors such as the experience, training, education and ability necessary for job performance. Simpson, 441 F.3d at 578. The court looks only to those skills required to perform the job and not an employee's general skill set. Id. (citing Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir. 1992)). To determine whether jobs require equal effort, the court considers the physical and mental exertion necessary to perform the job. Id. Lastly, to evaluate whether two jobs require equal responsibility, the court takes into account the respective degree of accountability of the employees. Id.

Archway argues that the only proper male comparators in this case are Hammill and Rustad, who were terminated prior to

plaintiffs being hired, and MacClaren and McKee, whose employment overlapped slightly with the employment of Arnott and Feichtinger. Plaintiffs argue that the court should compare their salaries to the male salespersons who worked during the time period they did. To determine which male salespersons' salaries may be appropriately compared to plaintiffs, the court must first determine which male salespersons performed work substantially equal to plaintiffs. However, the court finds that issues of fact exist as to whether the vertical and non-vertical sales positions were "substantially equal" and whether the non-vertical sales positions within the three different divisions were "substantially equal." In addition, following the two separate reorganizations of the sales force, issues of fact exist as to the degree of equality between plaintiffs' sales positions and the positions occupied by men.

Further, Archway has failed to establish that the pay differentials involved in this case between plaintiffs and the various male salespersons were based on a factor other than gender. Archway identifies purported combinations of numerous broad factors that were allegedly unique to each individual male salesperson to justify each salary — experience, qualifications, market demands, prior salary, geographic location, the particular division assigned, job expectations and job goals. However, any salesperson hired by any employer possesses a unique array of characteristics and experience. Under the EPA, Archway has the ultimate burden of

11

persuasion to establish that the job differentials were in fact based on a factor other than gender. Plaintiffs have factually challenged each of Archway's numerous justifications and argue that they had comparable "unique" characteristics. The court finds that issues of fact exist as to whether Archway based the pay differentials on a factor other than gender. For these reasons, summary judgment is not warranted on plaintiffs' EPA claims.

## III.  Title VII Claims

### A.    Gender Discrimination

Under Title VII, plaintiffs claim that Archway engaged in a pattern and practice of gender discrimination by starting male salespersons at a higher base salary with a higher title and assigning male salespersons better quality sales leads and accounts. A prima facie case of gender-based salary discrimination under Title VII is the same as a prima facie case under the EPA. See Tademe v. St. Cloud State Univ., 328 F.3d 982, 989 (8th Cir. 2003); Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 682 (8th Cir. 2001). As to the assignment of sales leads and accounts, plaintiffs must establish that (1) they were members of a protected class, (2) who were qualified to receive the benefit in question, (3) they were denied the benefit and (4) there exists evidence that gives rise to an inference of gender discrimination. Simmons v. New Public Sch. Dist., 251 F.3d 1210, 1214 (8th Cir. 2001). For the reasons previously stated, plaintiffs have established a prima

facie case of gender-based salary discrimination under Title VII. In addition, plaintiffs have established a prima facie case that Archway engaged in a pattern and practice of assigning better quality sales leads and accounts to male salespersons.

Under Title VII, once a plaintiff establishes a prima facie case of gender discrimination, the burden shifts to the employer to articulate a "'legitimate, nondiscriminatory reason'" for the employment action.  Ottman v. City of Independence, Mo., 341 F.3d 751, 757 (8th Cir. 2003) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); Simmons, 251 F.3d at 1217.  If an employer articulates a legitimate reason, the burden of persuasion shifts to the employee to establish that the reason proffered is pretext for discrimination.  Ottman, 341 F.3d at 757; Simmons, 251 F.3d at 1217.  Archway has articulated numerous reasons why leads and sales accounts were assigned to particular individuals and what factors other than gender were considered in determining a salesperson's base salary.  However, viewing all inferences in a light most favorable to the non-moving party, plaintiffs have produced sufficient evidence to create issues of fact regarding whether Archway's articulated reasons are pretext for gender-based employment discrimination.  Therefore, summary judgment is not warranted on plaintiffs' Title VII claims.

**B.    Reprisal Discrimination**

Bowen and Feichtinger claim that they were terminated because they complained about and reported the gender-based disparities to Herzog, McCreight and Velani.  Title VII prohibits an employer from taking an adverse employment action against an employee who has opposed an unlawful employment practice.  <u>See</u> 42 U.S.C. § 2000e-3(a).  To establish a prima facie case of reprisal discrimination, plaintiffs must show that (1) they engaged in activity protected under Title VII, (2) they suffered an adverse employment action and (3) there exists a causal connection between the protected activity and the adverse employment action.  <u>Sowell</u>, 251 F.3d at 684; <u>Wallace v. Sparks Health Sys.</u>, 415 F.3d 853, 858 (8th Cir. 2005).  As with plaintiffs' gender discrimination claim, if plaintiffs establish a prima facie case based on circumstantial evidence, the burden shifts to Archway to articulate a legitimate, nondiscriminatory reason for their terminations.  <u>Sowell</u>, 251 F.3d at 684 (citing <u>McDonnell Douglas</u>, 411 U.S. at 802).  The burden then returns to the plaintiff to prove that the articulated, legitimate reason is pretext for unlawful retaliation.  <u>Id.</u>

It is undisputed that plaintiffs Bowen and Feichtinger engaged in protected activity when they complained about perceived gender-based disparities in pay and account assignments and subsequently suffered an adverse employment action when their employment at Archway was terminated.  Archway argues, however, that plaintiffs

are unable to establish a causal connection between the complaints and their terminations and that, even if they could, plaintiffs' terminations were lawfully based on performance.  The court finds that the timing of the written severance agreements in this case is sufficient to give rise to an inference of retaliation.  Further, according to plaintiffs, Archway did not formally inform them of or document any deficiency in job performance prior to the termination letters.  In the written severance agreements the sole reason cited for their respective terminations was that Archway was streamlining the efficiency of its operations.  Although Archway has articulated legitimate reasons for terminating the employment of Bowen and Feichtinger, the court finds that issues of fact exist as to whether the reasons articulated are pretext for unlawful retaliation.  Therefore, summary judgment is not warranted.

**IV.   Age Discrimination in Employment Act Claims**

Arnott and Bowen have not opposed Archway's motion for summary judgment on their claims under the Age Discrimination in Employment Act.  See 29 U.S.C. §§ 621-634.  The record in this case is devoid of any evidence of age discrimination.  Therefore, the court grants summary judgment in favor of Archway on those claims.

**V.   Minnesota Human Rights Act Claims**

The court applies the same analysis to Bowen's gender discrimination claims under the Minnesota Human Rights Act ("MHRA") as it does to her claims brought under Title VII.  See Wittenburg

v. Am. Express Fin. Advisors, Inc., 464 F.3d 831, 842 n.16 (8th Cir. 2006); Kasper v. Federated Mut. Ins. Co., 425 F.3d 496, 502 (8th Cir. 2005).  Therefore, summary judgment is not warranted on Bowen's MHRA claims for the reasons that the court denied Archway's motion for summary judgment on her Title VII claims.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 21] is granted in part.

Dated: January 26, 2007

s/David S. Doty
David S. Doty, Judge
United States District Court